UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARK G. HARDY,                                      :

                Plaintiff,              : 10 Civ. 4178 (RMB) (GWG)

          -v.-                                   : REPORT AND RECOMMENDATION

NATIONAL ASSOCIATION OF INSURANCE      :
COMMISSIONERS, et al.,
                                                    :
               Defendants.
------------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

    Plaintiff, Mark G. Hardy, proceeding pro se, brings this suit against the National

Association of Insurance Commissioners ("NAIC") and the National Conference of Insurance

Guaranty Funds, Inc. ("NCIGF") (collectively "the defendants"). The defendants have jointly

moved to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure

9(b), 12(b)(1), and 12(b)(6). Because the defendants' motion to dismiss for lack of standing

should be granted, it is not necessary to reach the defendants' other arguments.

I.    BACKGROUND

    A.    The Allegations of the Amended Complaint

    For purposes of deciding the defendants' motion to dismiss, the Court assumes the

allegations in plaintiff's complaint are true.

    NAIC is an "organization of insurance regulators . . . from the 50 states, the District of

Columbia and the five [U.S.] territories." See Amended Complaint, filed Dec. 6, 2010 (Docket

# 19) ("Am. Compl.") ¶ 19. NCIGF "is a trade association for the Property & Casualty

Insurance Guaranty Funds of each state . . . ." Id. ¶ 22. NCIGF "works in close cooperation and

association with NAIC to monitor and respond to issues that might impact state guaranty funds."

Id. (internal quotation marks omitted).  NAIC members act in partnership with NCIGF members.
See id. ¶¶ 6, 9, 22.

Hardy is President of Petrosurance Inc. ("Petro"), the sole shareholder of the Oil & Gas
Insurance Company ("OGICO"), although Hardy "has had no interest, direct or indirect, in the
shares of PETRO since 1989."  See id. ¶ 3.  At some point, OGICO became insolvent.  See
generally id. ¶ 7 (a "NAIC member for Ohio act[ed] as Liquidator of OGICO").  The NAIC
member who acted as Liquidator of OGICO "failed to provide any explanation[] as to why she
[did] not collect[] more than $10,000,000 reported by the NCIGF members for Florida and
Illinois as having been improperly received by them for the account of OGICO shortly after the
[U.S.] Supreme Court declined to hear the Bowler Amicus case."  Id. (referring to the case of
Bowler v. United States, 538 U.S. 1031 (2003)).[1]

Beginning in 2001, Hardy corresponded with Douglas Hertlein, "an Ohio licensed
attorney, a senior employee of the NAIC member for the State of Ohio and a senior member of
NAIC committees overseeing NAIC's racketeering activities," regarding the "more than decade
long delay" in the "evaluation and payment of claims" from the OGICO estate.  Id. ¶ 2.  During
the course of this correspondence, Hertlein made knowingly false representations about the

---

[1]  While it is not necessary to the disposition of this motion, the Court notes that two court
decisions shed further light on the amended complaint's allegations.  One case reflects that
OGICO was "an Ohio-licensed property and casualty insurance company which primarily
insure[d] oil-and gas-related activities."  See Fabe v. Prompt Fin., 631 N.E.2d 614, 615 (Ohio
1994).  Another case reflects that, in 1990, OGICO was found to be insolvent and that an Ohio
court "ordered the Superintendent of Insurance to liquidate it, over the objection of [Petro]."
Hudson v. Petrosurance, Inc., 2009 WL 2596962, at *1 (Ohio Ct. App. Aug. 25, 2009).  On
August 21, 1991, Hardy filed a proof of claim, which was denied by OGICO's liquidator on
August 19, 2002.  Id.

OGICO liquidation to Hardy.  Id. ¶ 4; see id. ¶ 29.  Hertlein told Hardy that claims were not

being paid out of OGICO's estate because of "unresolved disputes" with the U.S. Department of

Treasury.  Id. ¶ 29.  These statements were false because the United States "had never sought to

assert claims in the OGICO liquidation and that more than enough money had been on hand

since 1998 to pay all [the] claims in full."  Id.

> Hertlein's statements to Hardy show
>
> a pattern of deliberately false utterances that were only discovered in December
> 2009 to have been made by Hertlein knowing them to be false and that were
> intended to, and did, cover up the Defendants['] conspiracy with their members,
> evidenced by correspondence to be discovered, through the mails and other means
> of interstate commerce, to carry out a pattern of racketeering activities by
> exhorting their members to breach State laws that otherwise provide an exclusive
> and strict code for the timeous payment of claims in rehabilitation and/or
> liquidation of insurance companies.

Id. ¶ 4.

In addition, the defendants filed an amicus brief in the United States Supreme Court in

the case of Bowler v. United States, 538 U.S. 1031 (2003).  See id. ¶¶ 5, 8, 31, 32, 33; Brief of

the National Association of Insurance Commissioners as Amicus Curiae in Support of Petition

for Writ of Certiorari (annexed as Ex. F to Declaration of Barry Levy, filed Jan. 11, 2011

(Docket # 31) ("Levy Decl.")) ("Bowler Amicus").  This amicus brief shows that the defendants'

"exhortations to NAIC members acting as Liquidators to breach State laws by refusing to pay

claims contrary to State laws" were intended to cause "deliberate loss to claimants in all

liquidation estates" and to cause "unjustified and unwarranted increases in insurance premiums

across the USA inter alia by causing the [i]nsurance [g]uaranty [f]unds of each [s]tate to raise

unjustified assessments on their members, that were passed on as unjustified increases in

premiums approved by NAIC members acting as Regulators . . . ."  Id. ¶¶ 5, 31.  The defendants

were advising their clients not to pay claims in any estates "even where all claims could and

should have been paid in full," id. ¶ 31, because they allegedly believed payment of claims may violate federal law, see id. ¶ 33. The defendants' beliefs were false and fraudulent because any disputes with the United States were "de minimis" and not a "hindrance" to the timely payment of claims. Id. ¶ 31; see id. ¶ 33.

Evidence of the defendants' conspiracy is further reflected in the 1987 liquidation of American Druggists Insurance Company ("ADIC"). Id. ¶¶ 25-28. The NAIC member for Ohio entered into a deal with an entity called ARMCO Inc., id. ¶ 25, in order to procure "retrospective changes in Ohio State laws," id. ¶ 26. As a result of this deal, there were "endless delays on the payment of claims" and claimants were prevented from seeking to pierce the corporate veil of ADIC. Id. ¶ 26.

Finally, NAIC members, acting as liquidators of insurance estates, have had "untenable conflicts of interest" that have gone unreported. See id. ¶¶ 9, 34, 36, 37. These conflicts were not reported "in order to continue, and cover up, the pattern of racketeering activities and conspiracies being promulgated by the [d]efendants." Id. ¶¶ 34, 36.

The amended complaint asserts that the defendants have violated 18 U.S.C. §§ 1343, 1349, 1509, and 1957 and have engaged in a pattern of RICO activity in violation of 18 U.S.C. §§ 1962(a)-(d). Id. ¶¶ 39-54. It also asserts that the defendants have violated "Common Law." Id. ¶¶ 42, 46, 50, 54. Hardy seeks compensatory damages, "punitive and aggravated" damages, treble damages pursuant to 18 U.S.C. § 1964(c), as well as a permanent injunction "enjoining the [d]efendants from continuing any course of conduct intending to prevent . . . the timeous payment of claim[s] in the estates of any and all insurance companies subject to an order of liquidation, and . . . from acting in any manner contrary to RICO." Id. ¶ 54A-F.

B.    Procedural History

Hardy filed the original complaint in this action on May 21, 2010.  See Complaint, filed

May 21, 2010 (Docket # 1).  The defendants then moved to dismiss.[2]  On December 6, 2010,

Hardy filed an amended complaint, as permitted by Fed. R. Civ. P. 15(a)(1)(B), as well as

opposition papers to the defendants' motion to dismiss.  See Am. Compl.; Declaration of Mark

G. Hardy, filed Dec. 6, 2010 (Docket # 20) ("Dec. 6 Hardy Decl."); Plaintiff's Memorandum of

Law in Reply and Opposition to Defendants Motion to Dismiss (attached to Dec. 6 Hardy Decl.).

On December 10, 2010, the Court deemed the defendants' motion to dismiss the original

complaint withdrawn and directed the defendants to respond to the amended complaint.  See

Order, filed Dec. 10, 2010 (Docket # 21).  The defendants filed a second motion to dismiss,

addressed to the amended complaint.[3]  Hardy filed opposition papers, see Plaintiff's

Memorandum of Law in Reply and Opposition to Defendants Motion to Dismiss Amended

Complaint, filed Feb. 10, 2011 (Docket # 33) ("Pl. Memo"); Declaration of Mark G. Hardy

(attached to Pl. Memo) ("Jan. 21 Hardy Decl."), and defendants filed a reply brief, see

Defendants National Association of Insurance Commissioners' and National Conference of

_____

[2] See Notice of Motion to Dismiss, filed Nov. 18, 2010 (Docket # 13); Declaration of Barry
Levy, filed Nov. 18, 2010 (Docket # 14); Defendants National Association of Insurance
Commissioners' and National Conference of Insurance Guaranty Funds' Memorandum of Law
in Support of their Motion to Dismiss, filed Nov. 18, 2010 (Docket # 15); Notice to Pro Se
Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings, filed Nov.
22, 2010 (Docket # 17).

[3] See Notice of Motion to Dismiss Amended Complaint, filed Jan. 11, 2011 (Docket # 29);
Defendants National Association of Insurance Commissioners' and National Conference of
Insurance Guaranty Funds' Memorandum of Law in Support of Their Motion to Dismiss the
Amended Complaint, filed Jan. 11, 2011 (Docket # 30); Levy Decl.; Notice to Pro Se Litigant
Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings, filed Jan. 7, 2011
(Docket # 28).

Insurance Guaranty Funds' Memorandum of Law in Further Support of their Motion to Dismiss the Amended Complaint, filed Jan. 31, 2011 (Docket # 32).

II.    DISCUSSION

    A.    Law Relating to Subject Matter Jurisdiction and Standing

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). Under Article III of the Constitution, federal courts have jurisdiction only over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Thus, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005); accord Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 69 (2d Cir.) ("The Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies. This limitation means that when a plaintiff brings suit in federal court, she must have standing to pursue the asserted claims.") (internal citation omitted), cert. denied, 534 U.S. 827 (2001).

To meet the Article III standing requirement,

a plaintiff must show [1] that he "suffered an injury-in-fact-an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; [2] that there was a "causal connection between the injury and the conduct complained of"; and [3] that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, [561] (1992) (citations and internal quotation marks omitted). "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561.

Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010).

    B.    Analysis

    The amended complaint contains but a single statement regarding Hardy's own injuries in this case: "Hardy brings this action . . . to recover the travel, accommodation and other costs and damages that Hardy personally incurred between January 1st[,] 2001 and August 7th[,] 2007 . . . as a direct result of the Defendants' more than decade long pattern of Racketeering activities and conspiracies . . . ."  Am. Compl. ¶ 1.  The remainder of the amended complaint, however, draws no connection between the defendants' actions and Hardy's "travel, accommodation and other costs and damages."  The amended complaint never explains the reason why Hardy suffered these injuries, much less connects that reason to any action taken by the defendants.

    At various points, the amended complaint makes oblique reference to the payment of claims relating to OGICO, see id. ¶ 2, and makes allegations about failure to pay claims on estates generally, e.g., id. ¶ 33, but the complaint never asserts that any failure to make such payments are among the damages Hardy is seeking.  To the contrary, Hardy explicitly denies that he makes any "claim in, or that could be asserted in, the liquidation of OGICO that is under the exclusive control of the Franklin County Court for the State of Ohio."  Id. ¶ 17; accord Pl. Memo at 2 (the amended complaint "clearly does not relate to any claim that could and/or should be asserted in the OGICO insurance company liquidation that commenced in August 1991 with its liabilities frozen at that date").

    Other paragraphs state conclusorily that the defendants' violations of law "caused damages to" Hardy and others or operated as a fraud upon Hardy and others, Am. Compl. ¶¶ 40, 42, 44, 46, 48, 50, 52, 54, but the amended complaint never says how this occurred.

    Thus, there is nothing in the amended complaint that connects any actions committed by defendants – whether it be the correspondence with Hertlein, the filing of the Bowler Amicus

7

brief, instructions given by the defendants to their members, or anything else – with any injury suffered by Hardy.  Because the complaint does not show a "causal connection between the injury and the conduct complained of," Carver, 621 F.3d at 225 (internal quotation marks and citation omitted), Hardy has not alleged facts demonstrating that he has standing and the complaint must be dismissed for lack of subject matter jurisdiction.[4]

III.   CONCLUSION

For the foregoing reasons, the motion to dismiss (Docket # 29) should be granted on the ground that this Court lacks subject matter jurisdiction over this case.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard M. Berman, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Berman.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v.

---

[4]  Insofar as Hardy's papers can be interpreted as a motion for discovery, see Jan. 21 Hardy Decl. ¶¶ 4, 5; Dec. 6 Hardy Decl. ¶ 4, this request should be denied because "[t]he discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made not to discover whether a claim exists."  Am. Commc'ns Ass'n v. Ret. Plan of Emps. of RCA Corp & Subsidiary Cos., 488 F. Supp. 479, 484 (S.D.N.Y.) (Weinfeld, J.), aff'd, 646 F.2d 559 (2d Cir. 1980).  In other words, a litigant may not obtain discovery under Fed. R. Civ. P. 26 to obtain support for a defective complaint.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: May 23, 2011
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Mark G. Hardy
53 Rue de Leur Min
Penvenan 22710
France

Melissa Brill
Cozen O'Connor
45 Broadway, 16th Floor
New York, NY 10006-3792

Barry I. Levy
Rivkin Radler
926 RXR Plaza
Uniondale, NY 11556

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  May 23, 2011
      New York, New York

                                   GABRIEL W. GORENSTEIN
                                   United States Magistrate Judge

Copies sent to:

Mark G. Hardy
53 Rue de Leur Min
Penvenan 22710
France

Melissa Brill
Cozen O'Connor
45 Broadway, 16th Floor
New York, NY 10006-3792

Barry I. Levy
Rivkin Radler
926 RXR Plaza
Uniondale, NY 11556

9